UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

| | |
|---|---|
| **Tom Schwartz, Vicki Schwartz, No Place Like Home, Inc., Danea Bruber, Lease-to-Own Homes, LLC, Jon Cleveland, Angela Cleveland, Home Equity Investments, Inc., Dave Hiltner, Rick Braun, and Home Buyers Consultants, Inc.,** | Civil No. 05-1232 (DSD/SRN) |
| **Plaintiffs,** | **REPORT AND RECOMMENDATION** |
| v. | |
| **National Home Trust Corporation d/b/a National Home Buyers Assistance, Michael Shinn, Daniel Siedlecki, Jeffrey Richardson, and Jennifer Shinn-Richardson,** | |
| **Defendants.** | |

Danell K. Olson, Esq. and J. Michael Dady, Esq., on behalf of Plaintiffs

Jay William Schlosser, Esq., on behalf of Defendants

SUSAN RICHARD NELSON, United States Magistrate Judge

     The above-entitled matter comes before the undersigned United States Magistrate Judge on Defendants' Motion to Compel Arbitration and to Dismiss or Stay Action (Doc. No. 2). This motion has been referred to the undersigned Magistrate Judge pursuant to 28 U.S.C. § 636 and Local Rule 72.1(c). For the reasons set forth below, this Court recommends that Defendants' motion be granted.

**I.    BACKGROUND**

In 2003 and 2004, the individual plaintiffs named above entered into franchise agreements with Defendant National Home Trust Corporation d/b/a National Home Buyers Assistance (NHBA) individually and/or through corporate entities of which they are shareholders. (Compl. ¶¶ 70, 91, 106, 141.) The agreements contain the following provisions:

> D.   COST AND ATTORNEY FEES.
>
> If a claim for amounts owed by FRANCHISEE to COMPANY or its affiliates is asserted in any judicial or arbitration proceedings or appeal thereof, or if COMPANY or FRANCHISEE is required to enforce this Agreement in a judicial or arbitration proceeding or appeal thereof, the party prevailing in such proceeding shall be entitled to reimbursement of its costs and expenses, including reasonable arbitration, accounting and legal fees, whether incurred prior to, in preparation for or in contemplation of the filing of any written demand, claim, action, hearing or proceeding to enforce the obligations of this Agreement.
> . . .
>
> E.   ARBITRATION.
> EXCEPT FOR CONTROVERSIES, DISPUTES OR CLAIMS RELATED TO OR BASED ON THE MARKS OR ANY LEASE OR REAL ESTATE, ALL CONTROVERSIES, DISPUTES OR CLAIMS BETWEEN COMPANY, ITS SUBSIDIARIES AND AFFILIATES AND THEIR SHAREHOLDERS, OFFICERS, DIRECTORS, AGENTS, EMPLOYEES AND ATTORNEYS (IN THEIR REPRESENTATIVE CAPACITY) AND FRANCHISEE (AND ITS OWNERS AND GUARANTORS, IF APPLICABLE) ARISING OUT OF OR RELATED TO: (1) THIS AGREEMENT OR ANY OTHER AGREEMENT BETWEEN THE PARTIES OR ANY PROVISION OF SUCH AGREEMENT; (2) THE RELATIONSHIP OF THE PARTIES HERETO; (3) THE VALIDITY OF THIS AGREEMENT OR ANY OTHER AGREEMENT BETWEEN THE PARTIES OR ANY PROVISION OF SUCH AGREEMENTS; OR (4) ANY SYSTEM STANDARD SHALL BE SUBMITTED FOR ARBITRATION TO THE COLORADO OFFICE OF THE AMERICAN ARBITRATION ASSOCIATION ON DEMAND OF EITHER PARTY. SUCH ARBITRATION PROCEEDINGS SHALL BE CONDUCTED IN COLORADO AND SHALL BE HEARD BY ONE ARBITRATOR IN ACCORDANCE WITH THE THEN CURRENT COMMERCIAL ARBITRATION RULES OF THE AMERICAN ARBITRATION ASSOCIATION.
> . . . .

>    COMPANY AND FRANCHISEE AGREE THAT ARBITRATION SHALL BE CONDUCTED ON AN INDIVIDUAL, NOT A CLASS-WIDE, BASIS AND THAT AN ARBITRATION PROCEEDING BETWEEN COMPANY AND FRANCHISEE SHALL NOT BE CONSOLIDATED WITH ANY OTHER ARBITRATION PROCEEDING INVOLVING COMPANY AND ANY OTHER PERSON, CORPORATION OR PARTNERSHIP. THE FRANCHISE AGREEMENT REQUIRES BINDING ARBITRATION. THE ARBITRATION WILL OCCUR IN COLORADO WITH THE COST BEING BORNE TO THE LOSING PARTY.[1]
>
>    F.   GOVERNING LAW/CONSENT TO JURISDICTION.
>    ALL DISPUTES RELATING TO PARAGRAPH E OF THIS SECTION AND ALL ISSUES RELATING TO ARBITRATION BY COMPANY AND FRANCHISEE SHALL BE GOVERNED BY THE FEDERAL ARBITRATION ACT (THE "FAA"). EXCEPT TO THE EXTENT GOVERNED BY THE FAA AND THE UNITED STATES TRADEMARK ACT OF 1946 (LANHAM ACT, 15 U.S.C. SECTION 1051 ET SEQ,) OR OTHER FEDERAL LAW, THIS AGREEMENT, THE FRANCHISEE, AND THE RELATIONSHIPS BETWEEN THE COMPANY AND THE FRANCHISEE, SHALL BE GOVERNED BY THE LAWS OF THE STATE OF COLORADO. FRANCHISEE AGREES THAT COMPANY MAY INSTITUTE ANY ACTION AGAINST FRANCHISEE (WHICH IS NOT REQUIRED TO BE ARBITRATED HEREUNDER) IN ANY STATE OR FEDERAL COURT OF GENERAL JURISDICTION IN THE STATE OF COLORADO AND FRANCHISEE IRREVOCABLY SUBMITS TO THE JURISDICTION OF SUCH COURTS AND

---

[1] Subsequent to the hearing on the motion, in a letter dated August 26, 2005, Plaintiffs provided the Court with what they represent are true and accurate copies of three of the four relevant arbitration provisions and Minnesota addenda. According to Plaintiffs, the agreements attributed to the Jon and Angela Cleveland/Home Equity Investments, Inc.–NHBA and the Danea Bruber/Lease-to-Own Homes, LLC–NHBA franchise relationships contain the verbatim arbitration text set forth here. The agreement attributed to the Tom and Vicki Schwartz/No Place Like Home, Inc.–NHBA and Dave Hiltner and Rick Braun/Home Buyers Consultants, Inc.–NHBA franchise relationships contains an additional sentence in section E: "THIS PROVISION MAY NOT BE ENFORCEABLE UNDER STATE LAW."

Defendants have also submitted, as exhibits to an attorney affidavit, the documents they believe to be the franchise agreements. (Doc. No. 6 Exs. 3-6.) Defendants' submissions indicate that the Bruber agreement matches verbatim the text reprinted herein but that the Cleveland, Hiltner/Braun, and Schwartz agreements all contain the additional sentence: "THIS PROVISION MAY NOT BE ENFORCEABLE UNDER STATE LAW." The Court concludes the discrepancy is immaterial to its determination but, for purposes of this motion, adopts the respective versions of the arbitration provision as submitted to the Court by Plaintiffs.

>    WAIVES ANY OBJECTION HE MAY HAVE TO EITHER THE JURISDICTION OF OR VENUE IN SUCH COURTS.
>
>    THE FRANCHISE AGREEMENT REQUIRES APPLICATION OF THE LAWS OF COLORADO.  THIS PROVISION MAY NOT BE ENFORCEABLE[2] UNDER STATE LAW.[3]

(Schlosser Aff., Ex. 4, ¶¶ 17E, 17F (all caps in original).  According to the Complaint, all of the Plaintiffs also received state law addenda (apparently as part of the uniform franchise offering circular) that reference Minn. Stat. § 80C.21 and Minn. Rule 2860.4400J.  (Compl. ¶ 13.)  That text reads:

>    Minn. Stat. Sec. 80C.21 and Minn. Rule Part 2860.4400J, may prohibit us from requiring litigation to be conducted outside Minnesota.  In addition, nothing in the Offering

---

[2] As noted in the previous footnote, subsequent to the hearing on the motion, in a letter dated August 26, 2005, Plaintiffs provided the Court with what they represent are true and accurate copies of three of the four relevant arbitration provisions and Minnesota addenda.  The agreements attributed to the Jon and Angela Cleveland / Home Equity Investments, Inc.–NHBA and the Danea Bruber/Lease-to-Own Homes, LLC–NHBA franchise relationships use the phrase "IS NOT ENFORCEABLE."  Defendants' submissions as to what they believe to be the franchise agreements (Doc. No. 6 Exs. 3-6) suggest this different phrase is only used in the Bruber agreement and that the Cleveland agreement uses the "MAY NOT BE ENFORCEABLE" language.  The Court concludes the discrepancy is immaterial to its determination but, for purposes of this motion, adopts the respective versions of the arbitration provision as submitted to the Court by Plaintiffs..

[3] As noted in the previous two footnotes, subsequent to the hearing on the motion, in a letter dated August 26, 2005, Plaintiffs provided the Court with what they represent are true and accurate copies of three of the four relevant arbitration provisions and Minnesota addenda.  In addition to the text cited here, the agreement attributed to the Tom and Vicki Schwartz/No Place Like Home, Inc.–NHBA franchise agreement includes the following text as an additional (and final) paragraph in section F:

>    Minn. Stat. [80C.21] and Minn. Rule 2860.4400J prohibit us from requiring litigation to be conducted outside of Minnesota.  In addition, nothing in the offering circular or agreement can abrogate or reduce any of your rights as provided for in Minnesota Statutes, Chapter 80C or your rights to any procedure, forum, or remedies provided for by the laws of the jurisdiction.

Defendants' submission of the Schwartz agreement contains the identical text referencing Minn. Stat. 80C.21 and Minn. R. 2860.4400J.  (Doc. No. 6 Ex. 3.)

> Circular or Franchise Agreement can abrogate or reduce any of your rights as provided for in Minnesota Statutes, Chapter 80C, or your rights to any procedure, forum, or remedies provided for by the laws of the jurisdiction.
> In accordance with Minnesota Rule 2860.4400J, and to the extent required by law, the Offering Circular and the Franchise Agreement are modified so that the franchisor can not require a franchisee to waive his or her rights to a jury trial or to waive rights to any procedure, forum, or remedies provided for by the laws of the jurisdiction, or to consent to liquidated damages, termination penalties, or judgment notes; provided that this part shall not bar an exclusive arbitration clause.

(Compl. Ex. B.) Plaintiffs now apparently contend that the Hiltner/Braun addendum does not contain the second paragraph of state law addendum text cited above and the Schwartzes may not have received a state law addendum.[4]

On March 10, 2005, Plaintiffs filed a Demand for Arbitration with the Central Case Management Center of the American Arbitration Association (AAA). (Compl. ¶ 145.) Plaintiffs' demand sought rescission of their franchise agreements and money damages due to Defendants' alleged (1) violations of the Minnesota Franchise Act, (2) misrepresentations of material facts, and (3) material breaches of contract and the implied covenant of good faith and fair dealing. (Id. ¶ 146.) On April 25, 2005, the AAA stated the arbitration hearing would be held in Denver, Colorado. (Id. ¶ 149.) On May 2, 2005, the AAA also informed Plaintiffs they would need a court order to join their respective claims into one action. (Id. ¶ 150.) On May 5, 2005, Plaintiffs withdrew their Demand for Arbitration. (Id. ¶ 151.)

On May 26, 2005, Plaintiffs filed the present action in a State of Minnesota district court. Plaintiffs' Complaint contains three counts. On June 22, 2005, Defendants removed the action to this

---

[4] Plaintiffs do not dispute that the first paragraph of the text found in the state addenda attached to Plaintiffs' Complaint can be found in Section 17 ¶ F of the Schwartz agreement.

5

Court. (Doc. No. 1.) Count I seeks a judgment declaring that their dispute with Defendants is not encompassed by the arbitration provision contained in their respective agreements and that the dispute is properly situated in Minnesota and that Plaintiffs can join their individual claims into one action against Defendants (or, in the alternative, that any arbitration required shall be conducted in Minneapolis, Minnesota and that Plaintiffs can arbitrate in one action). (Id. ¶¶ 152-164.) Count II charges that Defendants violated the Minnesota Franchise Act and the regulations promulgated thereunder by:

- offering the Schwartzes the NHBA franchise system prior to NHBA registering the NHBA system with the State of Minnesota;

- making untrue statements of material fact regarding the franchise opportunities being offered to Plaintiffs prior to Plaintiffs investing in, developing, or operating their respective NHBA franchises, and failing to state material facts necessary in order to make the statements made, in light of the circumstances in which they were made, not misleading;

- making projections as to the gross profits to be made through the operation of the NHBA franchises upon which Plaintiffs reasonably, and primarily, relied on in making a decision to invest in, or to continue to operate, the above-described franchises;

- making such projections outside the context of NHBA's uniform franchise offering circular; and

- failing to provide Plaintiffs with the factual basis for, and/or material assumptions explaining the limitations of certain "earnings claims."

(Id. ¶¶ 165-192.) Finally, Count III charges that NHBA made false and material misrepresentations and omissions of fact intended to deceive Plaintiffs and/or induce Plaintiffs to execute their respective agreements with NHBA.

Defendants now move the Court for an Order compelling Plaintiffs to arbitrate their dispute and to stay or dismiss the present action. (Doc. No. 2.) Defendants seek reimbursement of their costs and expenses incurred in enforcing the arbitration agreements. (Id.)

## II. PARTIES' POSITIONS

Plaintiffs concede each of the franchise agreements contains a valid arbitration provision but argue that their present claims occurred pre-contract and, thus, do not fall within the scope of that agreement. (See Doc. No. 14 at 11.) Defendants contend that the claims Plaintiffs assert are within the ambit of the arbitration provision and argue any doubts should be resolved in favor of arbitration especially since Plaintiffs already raised each of the claims in this suit in their Demand for Arbitration to the AAA. (See Doc. No. 18 at 4.)

Plaintiffs also assert that the arbitration language in the contracts was modified by the state law addenda which, according to Plaintiffs, prohibit Defendants from requiring arbitration in Colorado in lieu of litigation in Minnesota. (Doc. No. 14 at 15-16.) Plaintiffs also argue that, at the very least, the presence of the state law addenda's reference to Minn. Stat. 80C.21 and Minn. R. 2860.4400J makes ambiguous the availability of litigation to resolve the parties' disputes and such ambiguity should be construed against the drafter of the agreements—NHBA. (Id. at 16-18.) Moreover, Plaintiffs argue that even if they are required to arbitrate their disputes, the venue provision is invalid because of the anti-waiver language set forth in Minn. Stat. 80C.21 and Minn. R. 2860.4400J and/or because a Colorado venue is an unconscionable place and manner requirement. (Id. at 18-23.) Further, Plaintiffs argue that even if they are required to arbitrate their disputes, the text of the arbitration provision does not prohibit joinder of their claims into one action. (Id. at 23-25.) Finally, Plaintiffs contend that

7

Defendants are not entitled to recover any costs associated with their motion to compel arbitration because this action is based on their reasoned opinion that the issues raised in their Complaint fall outside the scope of the arbitration provision or, in the alternative, that the arbitration provisions' venue requirement is inapplicable or void. (Id. at 25-26.)

Defendants reply that the state law addenda references the applicability of the Minnesota Franchise Act's litigation provisions but argues that these provisions only apply in the absence of an exclusive arbitration provision. (See Doc. No. 18 at 8-13.) Defendants argue that the arbitration provision at issue here is exclusive. According to Defendants, if the Court finds that the present disputes are covered by the arbitration clause, the MFA's litigation provisions do not apply and arbitration is mandated. Further, they submit that once the Court determines the claims must be arbitrated, the Court loses the power to decide the remainder of the issues and must defer any other determinations to the AAA. (See id. at 13-15.) If the Court chooses to address the venue, joinder and cost and attorney's fees issues, Defendants first contend that the venue and individual arbitration requirements are valid parts of the arbitration agreement and should be enforced. (Id. at 15-21.) Second, Defendants argue that they should be awarded their costs and expenses in bringing their motion to compel regardless of the reasonableness of Plaintiffs' claims, because the arbitration agreements entitle them to their costs and expenses incurred if they are "required to enforce [the franchise agreements] in a judicial . . . proceeding" and prevail. (Id. at 22 (citing Section 17 ¶ D of the arbitration agreements.))

**III.    DISCUSSION**

Congress enacted the Federal Arbitration Act (FAA) to establish a "national policy favoring arbitration." Southland Corp. v. Keating, 465 U.S. 1, 10 (1984). Accordingly, there exists a strong federal presumption in favor of arbitration. See e.g., Volt Info. Sci. v. Bd. of Trs., 489 U.S. 468, 475 (1989). But a party cannot be compelled to arbitrate in the absence of a contractual obligation to do so. See In re Talbott Big Foot, Inc., 887 F.2d 611, 614 (5th Cir. 1989); Genesco, Inc. v. Kakiuchi & Co., 815 F.2d 840, 847 (2d Cir. 1987).

"A court's role under the FAA is therefore limited to determining (1) whether a valid agreement to arbitrate exists and, if it does, (2) whether the agreement encompasses the dispute." Pro Tech Indus., Inc. v. URS Corp., 377 F.3d 868, 871 (8th Cir. 2004) (citing Gannon v. Circuit City Stores, Inc., 262 F.3d 677, 680 (8th Cir.2001). The FAA describes the criteria for a valid arbitration clause as follows:

> A written provision in any . . . contract evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising out of such contract or transaction, or the refusal to perform the whole or any part thereof . . . shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract.

9 U.S.C. § 2 (2000). The FAA guides the Court's review of the clause's scope as follows:

> If any suit . . . brought in any of the courts of the United States upon any issue referable to arbitration under an agreement in writing for such arbitration, the court in which such suit is pending, upon being satisfied that the issue involved in such suit or proceeding is referable to arbitration under such agreement, shall on application of one of the parties stay the trial of the action until such arbitration has been had in accordance with the terms of the agreement . . . .

9 U.S.C. § 3. "The party resisting arbitration bears the burden of proving that the claims at issue are

9

unsuitable for arbitration." Green Tree Fin. Corp. v. Randolph, 531 U.S. 79, 91 (2000).  Any doubts about the scope of the arbitration clause are resolved in favor of arbitration.  AT&T Techs., Inc. v. Communication Workers of Am., 475 U.S. 643, 650 (1986).

### A. Existence of a Valid Arbitration Clause

Minnesota Statute section 80C.21 provides:

> Any condition, stipulation or provision, including any choice of law provision, purporting to bind any person who, at the time of acquiring a franchise is a resident of this state, or, in the case of a partnership or corporation, organized or incorporated under the laws of this state, or purporting to bind a person acquiring any franchise to be operated in this state to waive compliance or which has the effect of waiving compliance with any provision of sections 80C.01 to 80C.22 or any rule or order thereunder is void.

Minn. Stat. § 80C.21 (2004).  Minnesota Rule 2860.4400, promulgated by the Commissioner of the Minnesota Department of Commerce pursuant to Minnesota Statute sections 80C.14 and 80C.18, provides:

> All franchise contracts or agreements shall conform to the following provisions. It shall be unfair and inequitable for any person to . . . require a franchisee to waive his or her rights to a jury trial or to waive rights to any procedure, forum, or remedies provided for by the laws of the jurisdiction, or to consent to liquidated damages, termination penalties, or judgment notes; provided that this part shall not bar an exclusive arbitration clause.

Minn. R. 2860.4400J (2004) (emphasis added).

The Court finds, and Plaintiffs concede (Doc. No. 14 at 11), that Section 17 ¶ E of the franchise agreements constitutes a valid arbitration provision.  Plaintiffs argue that the state law addenda somehow revive, by amendment or by creating ambiguity, their right to litigate their claims despite the presence of the arbitration provision in each of the franchise agreements.  The state law addendum,

however, merely invokes the protections promulgated by the Minnesota Department of Commerce, as enforced via Minnesota Statute 80C.21, that, <u>in the absence of an exclusive arbitration clause</u>, no franchisor may "require a franchisee to waive his or her rights to a jury trial or to waive rights to any procedure, forum, or remedies provided for by the laws of the jurisdiction, or to consent to liquidated damages, termination penalties, or judgment notes." Minn. Rule 2860.4400J. The language of Minnesota Rule 2860.4400J is not in conflict with the arbitration clause of the franchise agreement; it relates the state law applicable to any disputes that fall outside of the arbitration provision's scope, namely those "based on the marks or any lease of real estate" (Compl. Ex. A Section 17 ¶ E). But those disputes that fall within the scope of the arbitration provision "shall be submitted for arbitration . . . on demand of either party." (<u>Id.</u>) Because this text mandates arbitration, it is an exclusive arbitration clause and is expressly exempted from the prohibition set forth in Minnesota Rule 2860.4400J.[5] Because the Court finds no ambiguity on the face of the whole franchise agreement, there is no need to construe the provisions against the drafter, NHBA.

      B.    <u>**Scope of the Arbitration Clause**</u>

Thus, the only determination for the Court is whether the arbitration provisions encompass Plaintiffs' dispute with Defendants. <u>Pro Tech Indus., Inc</u>, 377 F.3d at 871. Under the arbitration

---

[5] This finding is supported by the Minnesota Department of Commerce's modifications to the rule following the decision in <u>Seymour v. Gloria Jean's Coffee Bean Franchising Corp.</u>, 732 F. Supp. 988, 990 (D. Minn. 1990). The Seymour court found that the then-existing text of Rule 2860.4400J, which mandated that a franchisee be able to opt out of any exclusive arbitration clause, was preempted by the FAA. A year after the Seymour decision was filed the Department of Commerce adopted the current text of the rule which carves out an explicit exception for exclusive arbitration agreements. <u>See</u> 15 Minn. Reg. 1391 (Dec. 17, 1990), 15 Minn. Reg. 2104 (Mar. 18, 1991).

provisions, the parties must arbitrate any dispute "arising out of or related to:" (1) the franchise agreement or any other agreement between the parties or any provision thereof; (2) the relationship of the parties; or (3) the validity of the franchise agreement or any agreement between the parties or any provision thereof.  (Compl. Ex. A.)  This language creates a very broad arbitration clause.  See Prima Paint Corp. v. Flood & Conlkin Mfg. Co., 388 U.S. 395, 398 (1967) (describing consulting agreement's arbitration provision covering "(a)ny controversy or claim arising out of or relating to this Agreement" as broad); Fleet Tire Serv. v. Oliver Rubber Co., 118 F.3d 619, 620-21 (8th Cir. 1997) (noting that arbitration provision that covered, "[a]ny controversy or claim arising out of or relating to this Agreement . . . . constitute[d] the broadest language the parties could reasonably use to subject their disputes to" arbitration).

Here, Plaintiffs' Complaint essentially charges that Defendants violated the Minnesota Franchise Act and/or state common law by making, intentionally or negligently, misrepresentations about the profits Plaintiff could expect as NHBA franchisees and that these misrepresentations induced Plaintiffs to execute the franchise agreements.  (Compl. ¶ 1.)  Other courts have found similar claims or those with even less of a nexus to the actual terms of the contract to be covered by similar arbitration clauses. See, e.g., Southland Corp., 465 U.S. at 17 (finding claims by a franchisee for fraud, breach of fiduciary duty, and breach of contract were arbitrable under any "controversy or claim arising out of or relating to" arbitration clause); Prima Paint, 388 U.S. at 406 (finding that consulting agreement's arbitration provision covering "(a)ny controversy or claim arising out of or relating to this Agreement" encompassed plaintiff's claim of fraudulent inducement to enter the consulting agreement); Federated Dep't Stores, Inc. v. J.V.B. Indus., Inc., 894 F.2d 862, 869-70 (6th Cir. 1990) (finding tort claims

12

were within arbitration clause language pertaining to disputes "arising out of, or relating to" the agreement); N & D Fashions, Inc. v. DHJ Indus., Inc., 548 F.2d 722, 728 (8th Cir. 1976) (finding that "a claim of fraud in the inducement to enter the contract, because it does not go to the 'making (and performance) of the agreement to arbitrate,' is properly left to the arbitrator" (citation omitted)). Given the above, the Court finds that all of Plaintiffs' claims fall within the scope of the broad arbitration clauses to which they agreed. Plaintiffs have not met their burden to show why the Court should find otherwise. Green Tree, 531 U.S. at 91.

### C.   Venue, Joinder, and Costs and Attorney's Fees

Plaintiffs also argue in the alternative that, even if the Court finds their claims subject to arbitration, the Court should: (1) find the venue provision invalid and allow arbitration to proceed in Minneapolis, (2) interpret the provision requiring claims to be brought on an individual basis to allow for joinder of their claims, and (3) interpret the provision providing for costs and attorney's fees in certain circumstances to deny Defendants' request for such fees. (Doc. No. 14 at 18-26.) This Court's "role under the FAA is . . . limited to determining (1) whether a valid agreement to arbitrate exists and, if it does, (2) whether the agreement encompasses the dispute." Pro Tech Indus., 377 F.3d at 871. Having found that valid agreements to arbitrate exist and that those agreements encompass Plaintiffs' clams, the Court defers any further interpretation of the arbitration agreement and resolution of the venue, joinder, and cost and attorney's fees[6] issues to the AAA.

Based upon the above findings, the Court recommends granting Defendants' motion because

---

[6] At oral argument, Defendants conceded their request for an award of costs and attorney's fees could be addressed in the arbitration proceeding.

13

Plaintiffs' claims are referable to arbitration under the terms of Section 17 ¶ E of the relevant arbitration provisions as discussed herein.  Because the Court finds that all of Plaintiffs' claims are within the scope of the arbitration clause and that all of these claims must be arbitrated, the Court recommends dismissing Plantiffs' Complaint.  See Alford v. Dean Witter Reynolds, Inc., 975 F.2d 1161, 1164 (5th Cir. 1992) ("The weight of authority clearly supports dismissal of the case when all of the issues raised in the district court must be submitted to arbitration." (emphasis in original)); Sparling v. Hoffman Constr. Co., 864 F.2d 635, 638 (9th Cir. 1988) (expressly holding that 9 U.S.C. § 3 does not preclude dismissal).

Based upon the foregoing, and all the files, records and proceedings herein,

**IT IS HEREBY RECOMMENDED that:**

1. Defendants' Motion to Dismiss and to Compel Arbitration (Doc. 2) be **GRANTED**; and

2. Plaintiffs' Complaint be **DISMISSED WITH PREJUDICE**.

Dated:  November 23, 2005

  s/ Susan Richard Nelson
SUSAN RICHARD NELSON
United States Magistrate Judge

Under D. Minn. LR 72.1(c)(2) any party may object to this Report and Recommendation by filing with the Clerk of Court, and serving all parties by December 9, 2005, a writing which specifically identifies those portions of this Report to which objections are made and the basis of those objections.  Any party wishing to oppose such objections must file and serve all parties with its response.  Failure to comply with this procedure may operate as a forfeiture of the objecting party's right to seek review in the Court of Appeals.